LUDGER J. RENOUF, Assignee in Insolvency,

*vs.*

FREDERICK YATES.

York.　Opinion April 16, 1900.

*Insolvency.　Preference.　Chattel Mortgage.　R. S., c. 70, § 33.*

In an action of trover by the assignee of an insolvent debtor to recover the value of a stock of goods, the defendant relied upon a chattel mortgage given by the insolvent to him under date of April 8, 1897, but not recorded until May 17, 1898, eleven days before the commencement of insolvency proceedings against the mortgagor.

*Held;* that, although the transactions between the mortgagor and mortgagee were intended to give the mortgage the appearance of being for a present

consideration, the undisputed facts of the case clearly show that it was in fact given to secure a debt to a prior existing creditor.

*Also;* that consequently, by R. S., c. 70, § 33, the assignment from the judge of the court of insolvency to the assignee in insolvency vested in him the title to the stock of goods, claimed by the defendant under this mortgage, which had not been recorded three months prior to the commencement of insolvency proceedings.

ON REPORT.

This was an action of trover brought by the plaintiff as assignee of Cyprien A. Lacroix, an insolvent debtor, against the defendant, Frederick Yates, for the conversion of a stock of goods that were in the possession of Lacroix and, as his property at the time when insolvency proceedings were instituted, and claiming that by virtue of the assignment to the plaintiff by the court of insolvency, the title became vested in him. The insolvency proceedings were commenced on the 31st day of May, 1898, the assignment was made to the plaintiff July 6th, 1898, and the action brought September 3rd, 1898.

The defendant claimed under a mortgage given to him by Lacroix to secure a note for $6,500, the note and mortgage bearing date of April 8th, 1897. This mortgage was not recorded till May 17th, 1898, eleven days before the commencement of insolvency proceedings, begun May 31, 1898.

On the 31st day of May the defendant claimed to have begun foreclosure proceedings which resulted, at the expiration of sixty days, in vesting the title in him, and under this claim proceeded to sell the stock, receiving, less expenses and the cost of new goods purchased by him, $4,421.58. The plaintiff after he was appointed assignee of Lacroix made a demand on the defendant for the goods. The defendant refused to deliver the goods to him.

The plaintiff based his claim upon three grounds. 1st. That under the provisions of the statutes the mortgage, being given for a prior existing debt, and not having been recorded at least three months preceding the commencement of insolvency proceedings, was invalid, and the title vested in the assignee. 2nd. On the evidence of the defendant, Yates,— (if the mortgage was not to secure a prior existing debt,)—the alleged title in him was fictitious

and a nullity, in that the note for $6500, for which the mortgage was given as a security, was without consideration. 3rd. The agreement between the defendant Yates and Lacroix that Yates would keep the mortgage from record, so as not to injure Lacroix's credit and so that nobody should know of its existence, rendered the mortgage void at common law.

The defendant claimed that the mortgage was not given to secure a pre-existing debt; that he owned the stock of goods and had the lawful right to sell them as the mortgage was not paid; and that Lacroix agreed in consideration of the transfer to him of the goods to pay $10,500 as set forth in the bill of sale; that Lacroix made the trade and his assignee had no right to insist upon a different one; that the bill of sale from the bank to Yates made Yates the legal owner of the goods; and that the bill of sale from Yates to Lacroix and mortgage from Lacroix to Yates were one transaction, and if void in part, was void in all, and the title would remain in himself, the defendant.

Other facts are stated in the opinion.

*J. O. Bradbury and N. B. Walker*, for plaintiff.

Trover by the assignee is the proper remedy for goods conveyed in fraud of the insolvency laws and converted. *Wyman* v. *Gay*, 90 Maine, 36.

The measure of damages is the value of the property at the time of the conversion, with interest from the time when the cause of action accrues. *Wing* v. *Milliken*, 91 Maine, 387.

It is apparent from the evidence that the defendant between the time when he was examined before the commissioner, when he admitted the mortgage to be to secure a prior existing debt, and the time of this trial, changed his position.

The defendant now claims title under a mortgage which he alleges was to secure the balance of the purchase price of the stock which he says he sold to Lacroix.

But we say, this purchase by Yates was fictitious, that the money was furnished by Lacroix, and that the title really vested in Lacroix.

The person who takes the title of personal property is the nominal,—he who pays the consideration the real purchaser. *Godding* v. *Brackett*, 34 Maine, 27.

As the title actually vested in Lacroix rather than Yates, the so-called note for the balance of the purchase price which Lacroix was to pay Yates was without consideration, and consequently the mortgage must be invalid for want of consideration. 15 Am. & Eng. Enc. of Law, p. 761, § 7; *West* v. *Hendrick*, 28 Ala. 226; *Wilmerding* v. *Mitchell*, 42 N. J. L. 476; *Culver* v. *Sisson*, 3 N. Y. 264; Jones on Chattel Mortgages, 4th. Ed. § 80.

Where there is no consideration for a mortgage it is "from the beginning inoperative." *Jewett* v. *Preston*, 27 Maine, 400.

The defendant knew that Lacroix was insolvent. The bank had just foreclosed its mortgage, when he took the mortgage in question. He knew of demands in his bank amounting to $4000 against Lacroix. He knew that he himself held a claim of $6500 against Lacroix, and that he (Lacroix) was "scheming or laying plans to pay Peter and take from Paul."

Under these circumstances, the agreement to conceal and keep the mortgage from record, so that Lacroix could have a fictitious credit, and the fact, that not until the creditors became very urgent, was the mortgage recorded, establish such a fraud as renders the mortgage void as against the assignee of Lacroix in insolvency. Cases cited in Waite on Fraudulent Conveyances, (3rd Ed.) p. 53, note 1.

*Geo. F. and Leroy Haley*, for defendant.

No brief of counsel for defendant was received by the reporter.

SITTING: HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

WISWELL, J. Action of trover brought by the assignee in insolvency of one Lacroix, who was duly adjudged an insolvent upon the petition of his creditors filed May 31, 1898.

From the report of the testimony, upon which the case comes to the law court, these facts appear: On April 8, 1897, Lacroix was indebted to the Biddeford National Bank in the sum of $4000, as

security for which amount the bank held a chattel mortgage upon his stock of goods, which mortgage had been fully foreclosed prior to that day. The value of this stock of goods at that time is somewhat in doubt, but it wās unquestionably worth considerably more than the amount of the indebtedness. The defendant testified that the stock was worth at the time between $6000 and $7000. There had been some understanding, more or less definite, between Lacroix and the officers of the bank that he might redeem from the mortgage, notwithstanding its foreclosure, upon paying the amount due to the bank, and upon that day he went to the bank for the purpose of carrying this arrangement into effect.

Upon the same day, but whether before or after Lacroix's arrival is in doubt, the bank transferred by a bill of sale all of its right and interest in the stock of goods to the defendant, who is the father-in-law of Lacroix and the president of the bank. In payment to the bank for this transfer of its interest in the stock of goods, the defendant gave the bank a check, drawn upon it, for the amount of the indebtedness, $4000, although in fact he had no considerable balance to his credit at the time and relied upon the sum that he was to receive from Lacroix to meet his check. The check was not charged to his account until after the check from Lacroix for a like amount had been placed to his credit.

Upon the same day the defendant gave a bill of sale of the stock of goods to Lacroix, which purported to be for a consideration of $10,500, of which amount $4000 was actually paid in cash at the time and a mortgage given back by Lacroix to the defendant to secure the sum of $6500. Prior to this transaction Lacroix was indebted to the defendant for two sums of money, sometime before loaned by the latter to him, of $5000 and $1500, respectively, the aggregate of which is the precise amount for which the mortgage to defendant was given.

So that by this transaction the defendant, without expending, or even using temporarily a dollar of his own money, obtained an apparent title to a stock of goods worth, as he says, between $6000 and $7000, sold it on the same day to his son-in-law for a cash payment exactly equal to the amount that he had paid in the man-

ner above described, and received in addition thereto a mortgage of the stock to secure the sum of $6500, a sum exactly equal to the amount of the two former loans made by him to his son-in-law.

The mere statement of the foregoing facts, about which there is no controversy, shows conclusively that the sole object of the entire transaction was that the defendant might obtain some security for the amount previously loaned by him to his son-in-law, and that the transaction might have the effect of showing a then present consideration for the mortgage.

It can not be believed that the bank, after making an arrangement more or less definite with Lacroix that he might redeem from the mortgage by paying the amount due, would have transferred its interest in the stock of goods, worth several thousand dollars more than the indebtedness, for the amount of the indebtedness, to its president, the father-in-law of the mortgagor; or that the president would have taken the same, except for the benefit of the mortgagor and for the further purpose of giving to the defendant an opportunity to obtain security for his former loans in this way. In fact, the defendant admits this to have been the purpose and effect of the transaction when he says in his testimony: " That (the $6500 note and mortgage) wiped out all of his indebtedness to me."

This mortgage is relied upon by the defendant for the purpose of proving his title to the stock of goods which he subsequently, but before the commencement of this action, took possession of, and after foreclosing the mortgage, sold. The mortgage, and its foreclosure, would have undoubtedly given him title to the chattels covered thereby, except for the further fact that it was not recorded until May 17th, 1898, only eleven days before the commencement of the insolvency proceedings.

But the mortgage was given, as we have seen, and as the case clearly shows, " to secure a debt to a prior existing creditor." It had not been recorded three months prior to the commencement of the insolvency proceedings. Consequently, by R. S., c. 70, § 33, the assignment from the judge of the court of insolvency to the assignee in insolvency vested in him the title to the stock of goods

covered by this mortgage, and claimed by the defendant under this mortgage, given by the insolvent to him to secure a prior existing indebtedness.

The only remaining question is as to the amount of damages. The measure of damages is the value of the property at the time of the conversion, with interest thereon from the time when the cause of action accrued. There is more or less controversy as to the value of the stock of goods at the time of the defendant's conversion. But we think that the best and most satisfactory evidence upon this question of value comes from the actual sale of the goods, as the defendant evidently endeavored to obtain as much as possible therefrom. The amount actually received by him from the sale was $6579.58, from which should be deducted the expenses of the sale and the expenditures made by him for new goods bought for the purpose of continuing the sale at retail. These amounts aggregate $2158.97, and leave $4420.61 as the net value of the stock at the time of the conversion, to which should be added interest from the date of the demand and refusal, August 1, 1898.

> *Judgment for plaintiff for $4420.61*
> *and interest from August 1, 1898.*